UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| LANCE JONATHAN BRUHNKE, | Case No.: 2:15-cv-00441-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Respondent. | |

Pending before this Court is Petitioner Lance Jonathan Bruhnke's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for Supplemental Security Income. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

I. **ADMINISTRATIVE PROCEEDINGS**

On February 7, 2012, Lance Jonathan Bruhnke ("Petitioner") filed an application for Supplemental Security Income, alleging disability beginning January 1, 2012. Petitioner's claim was initially denied on April 12, 2012 and, again, on reconsideration on June 22, 2012. On July 8, 2012, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On October 31, 2013, ALJ R.J. Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Erica L. Wood, appeared and testified, along with impartial medial expert, Margaret Moore, Ph.D. A supplemental hearing was held on February

**MEMORANDUM DECISION AND ORDER - 1**

19, 2014 in Spokane, Washington, at which time impartial vocational expert, Deborah Lapoint appeared and testified.

On May 29, 2014, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on July 23, 2014 and, on July 24, 2015, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action, arguing that the ALJ improperly concluded that Petitioner was not performing at his full capacity. *See* Pet.'s Brief, p. 2 (Docket No. 15). Specifically, Petitioner contends that (1) the ALJ erred by failing to properly explain the weight given (or give appropriate weight) to opinion evidence from lay witnesses; and (2) the ALJ erred by failing to properly weigh the examining psychologist's opinion. *See id.* at pp. 11-15. Petitioner therefore requests that the Court either reverse the ALJ's decision denying Petitioner's claim for disability benefits, or, alternatively, remand the case for further proceedings and award attorneys' fees. *See* Pet. for Review, p. 3 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since February 7, 2012, Petitioner's application date. *See* (AR 35).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "borderline intellectual functioning and learning disorder." (AR 35-38).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 38-39).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is

his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC "to perform a full range or work at all exertional levels." (AR 23). Specifically:

> He is capable of handling simple, repetitive-type tasks, as well as more complex instructions if given time to learn by demonstration with direct-type training. He does not need one-on-one instruction. He cannot work in high stress job situations (e.g., angry members of the public or heavy use of computer for data input). Public contact should be kept limited (e.g., occasional and non-confrontational-type contact). He can work adequately on a work crew. Supervision requirements are normal; he does not require constant supervision.

(AR 39-42).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner has no past relevant work. *See* (AR 42). However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including housekeeper/cleaner, hand packager, and automobile detailer. *See* (AR 43).

**MEMORANDUM DECISION AND ORDER - 6**

Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from June 21, 2012, through the date of this decision." (AR 44).

**B.    Analysis**

    1.    <u>Lay Witness Testimony</u>

Petitioner contends that the ALJ did not properly consider evidence from two lay witnesses: (1) Petitioner's brother, Kurt Bruhnke; and (2) TESH commercial services manager, Howard Hogan. *See* Pet.'s Brief, pp. 11-12 (Docket No. 15). The evidence referred to from Mr. Bruhnke is a November 6, 2013 letter, which Petitioner characterizes as stating the following:

- In small jobs around the home, Petitioner was slow or easily side-tracked. When Mr. Bruhnke's wife worked beside Petitioner, he was able to stay on task.

- Trouble retaining information after many reviews – example of lack of retention of details of a movie he had watched dozens of times.

- Struggles to set goals or make plans perhaps due to a fear of failure.

- Required assistance to fill out forms such as food stamp application or job.

*See id*. at p. 10 (citing (AR 389-90)). As to Mr. Hogan, the evidence referred to is a February 14, 2014 letter with attachments, which Petitioner characterizes as stating the following:

- Had worked from October 19, 2012 to February 14, 2014 (when statement made) on a crew to clean a high school.

- TESH supports Lance at work by transporting him to and from work, nightly work assignments, checking assignments, and redirecting to make corrections.

- Generally must be redirected nightly on some issue.

- Working supervisor on site throughout the shift, he is never working independently.

**MEMORANDUM DECISION AND ORDER - 7**

- • "The supervisor must also make nightly follow-up assignments as [Petitioner] does not independently start another task once he is finished with the one currently assigned to him."

- • He was originally assigned to two crews and two buildings which made it difficult for him to keep on track. "It was confusing for him trying to find his way around two large buildings and take direction from two supervisors with different communicating styles."

- • "I believe that [Petitioner] is successful in this type of structured part-time employment, but I'm not convinced he would be equally successful in a work environment without these supports."

*See id*. at pp. 9-10 (citing/quoting (AR 394)).

Within the May 29, 2014 Decision, the ALJ discussed certain third-party statements, including those from Petitioner's sister-in-law, Melissa Bruhnke, and Mr. Hogan. *See* AR (41). With regard to these opinions, the ALJ concluded:

> These third-party statements do indicate the claimant is capable of at least simple and repetitive tasks, with more difficulty as the complexity of the task increases. They also indicate no significant difficulties socially or a need to be closely supervised to complete tasks. The structured environment outlined by Mr. Hogan has helped the claimant be successful currently, but does not indicate that he cannot work successfully outside of that structure within his limitations. As stated by Dr. Moore, the issue here is inexperience, and there is simply no support in this record that he would not be successful within his limitations.

(AR 41); *see also* (AR 40-41) (AJL discussing statements from TESH representatives, concluding: "In this case, [Petitioner] has been able to be successful in his first real job assignment, and he is to be applauded for taking the opportunity he has been given to do his very best. Indeed, he himself believes he can work, which is borne out by the positive work experience he currently has.") (citing (AR 346-78)). Relevant here however, the ALJ made no mention of either Mr. Bruhnke or the statements made within his November 6, 2013 letter. Petitioner now argues that the ALJ committed error in not addressing Mr. Bruhnke's statements,

**MEMORANDUM DECISION AND ORDER - 8**

and in failing to give proper weight to certain of Mr. Hogan's opinions. The undersigned disagrees.

Lay witness testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Competent lay witness testimony "cannot be disregarded without comment," and to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *See id.* (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that, because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")). The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3); *see also* SSR 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

As to Mr. Bruhnke, Respondent appropriately points out that his testimony (reflected in Petitioner's above-characterization of the same) aligns with that of Ms. Bruhnke's (Mr.

**MEMORANDUM DECISION AND ORDER - 9**

Bruhnke's wife and Petitioner's sister-in-law). *See* Resp.'s Brief, p. 7 (Docket No. 16) ("Here, [Mr.] Bruhnke's lay witness statement about his observations of Petitioner's difficulties retaining information, problems doing tasks that he ([Mr.] Bruhnke) and his wife gave Petitioner to do without their supervision, comprehending things, completing forms, and poor judgment in managing money was very similar to the statement of [Ms.] Bruhnke ([Mr.] Bruhnke's wife and Petitioner's sister-in-law) of her observations of Petitioner which the ALJ noted and provided germane reasons to reject.") (internal citations omitted). To be sure, Petitioner characterizes Ms. Bruhnke's observations as stating the following:

- Unable to pass drivers renewal test after about five times.

- Takes longer than normal to complete some (new tasks): "I have to explain often things that are difficult for him to understand."

- Doesn't follow spoken instructions well for "more complex tasks . . . [o]therwise, he needs to be reminded most times."

- When asked to do tasks last summer (like pick up leaves, dig a ditch, and paint), he took very long and/or did not follow easy directions.

- Cannot think abstractly. It must be very concrete. Filling out forms having proven to be a task for him. He doesn't seem to comprehend well.

- Needs to be hand-held to do work that is new to him.

*See* Pet.'s Brief, p. 10 (Docket No. 15) (citing (AR 301-06)). These observations from Ms. Bruhnke logically track those from Mr. Bruhnke, such that the ALJ's consideration of Ms. Bruhnke's testimony – constituting germane reasons for "rejecting"[1] Ms. Bruhnke's testimony – applies equally to Mr. Bruhnke's testimony (even though the ALJ did not specifically address

---

[1] It is not entirely accurate to say that the ALJ "rejected" any particular third-party statement. Rather, it would appear that the ALJ utilized such testimony to support his RFC determination. *See supra* (quoting (AR 41)). Regardless, to the extent the ALJ's consideration of such statements can be read as constituting a rejection of the same, germane reasons exist to support such a rejection.

**MEMORANDUM DECISION AND ORDER - 10**

Mr. Bruhnke's testimony). That is to say the ALJ's oversight in not considering Mr. Bruhnke's testimony represents harmless error. *See Molina*, 674 F.3d at 1122 ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'") (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

      Turning to Mr. Hogan, Petitioner argues that the ALJ "failed to incorporate or reject Mr. Hogan's description of the Petitioner struggling with change." Pet.'s Brief, p. 12 (Docket No. 15) (citing (AR 394)). But Mr. Hogan wasn't so precise on this nuanced aspect, stating only that, "[w]hen [Petitioner] was originally assigned to two different crews, it was difficult for him to keep on track" and that "[i]t was confusing for him trying to find his way around two large buildings and take direction from two supervisors with different communication styles." (AR 394)). In the Court's mind, such statements do not equate to Petitioner absolutely struggling with changes in a routine work setting that must be accounted for under SSR 85-15. *See* (AR 40-41) (ALJ nonetheless discussing SSR 85-15 in context of Petitioner's medically determinable impairments and /'learning difficulties"); *see also* (AR 411) (Gerald Gardner, Ph.D., opining that Petitioner "appears capable of simple and concrete adjustments to change."). Additionally, Petitioner's January 28, 2014 Work Evaluation (preceding Mr. Hogan's letter by approximately two weeks) indicates – like the ALJ concluded – that, within his limitations, Petitioner can be successful in a work environment, and beyond the structured environment provided by TESH. Therein, Petitioner's supervisor, Al Clayton, testified that:

- "[Petitioner] is always ready for transportation to the job site. If sick or unable to work his shift, I am always notified in time to make a change. He volunteers for extra work when it is available."

**MEMORANDUM DECISION AND ORDER - 11**

- "[Petitioner] is positive about work, follows rules, and does his share of the work load."

- "[Petitioner] works at a good pace for the entire shift . . . has good stamina for the job . . . Stays busy while on his assigned tasks[,]" but "could have more initiative, and ask for more responsibility."

- "[Petitioner] interacts well with his supervisor, job coaches and fellow workers [and] uses appropriate language when socializing with people."

- Petitioner demonstrates reliability, "being a steady competent worker, and volunteering to work extra shifts when needed."

- Petitioner faces challenges with transportation and a "[w]illingness to show more initiative and ask for more responsibility." Still, Petitioner "has a good basis for work and just needs to expand the base and take on more of a leadership role with the crew."

(AR 395-97). With all this in mind, like Mr. Bruhnke's statements (*see supra*), the ALJ's handling of Mr. Hogan's statements were appropriate and germane when considering the balance of evidence contained in the record.

2. Petitioner's Examining Psychologist's Opinion

Petitioner claims the ALJ improperly rejected Dr. Rehnberg's opinion. *See* Pet.'s Brief, pp. 12-15 (Docket No. 15). The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount

**MEMORANDUM DECISION AND ORDER - 12**

physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Dr. Rehnberg examined Petitioner on September 25, 2013, completing a Mental Residual Functional Capacity Assessment (the "Assessment") on October 2, 2013. *See* (AR 439-50). Within the Assessment, Dr. Rehnberg concluded that Petitioner had marked[2] limitations in Petitioner's:

- ability to remember locations and work-life procedures;
- ability to understand and remember detailed instructions;
- ability to carry out detailed instructions;
- ability to sustain an ordinary routine without special supervision;
- ability to travel in unfamiliar places or use public transportation; and
- ability to set realistic goals or make plans independently of others.

*See* (AR 447-50). Dr. Rehnberg went on to conclude that Petitioner had moderate[3] limitations in Petitioner's:

- ability to maintain attention and concentration for extended periods; and
- ability to ask simple questions or request assistance.

---

[2] Marked limitations represent impairments that "interfere[ ] seriously with the ability to function independently, appropriately, effectively, and on a sustained basis." (AR 446) ("More than moderate but less than extreme").

[3] Moderate limitations represent "[a] degree of impairment that would be noticed by co-workers and supervisors and detract significantly from the individual's ability to perform the basic work functions." (AR 446) ("A significant effect on the ability to perform basic work functions.").

**MEMORANDUM DECISION AND ORDER - 13**

*See* (AR 448-49). Finally, Dr. Rehnberg concluded that Petitioner had mild[4] limitations in Petitioner's:

- ability to understand and remember very short and simple instructions;

- ability to carry out very short and simple instructions;

- ability to make simple work-related decisions;

- ability to accept instructions and respond appropriately to criticism from supervisors; and

- ability to be aware of normal hazards and take appropriate precautions.

(AR 447-50).

Petitioner claims that the ALJ did not give these opinions (presumably those representing either marked or moderate limitations) the appropriate level of deference, and/or articulate specific and legitimate reasons for rejecting the same. *See* Pet.'s Brief, p. 13 (Docket No. 15). The ALJ noted that Dr. Rehnberg (and others) opined that Petitioner was capable of performing simple, routine, and repetitive tasks. *See* (AR 37, 41-42). However, the ALJ took issue with any notion that such tasks were all that Petitioner could accomplish and, in this respect, rejected Dr. Rehnberg's opinions to the extent they suggest the opposite. In doing so, the ALJ referenced (1) Dr. Moore's testimony at the October 31, 2013 hearing, (2) Gerald Gardner, Ph.D.'s opinions, (3) Petitioner's employment with TESH, and (4) Petitioner's own testimony at the October 31, 2013 hearing. In particular, the ALJ pointed out:

- Dr. Moore reviewed the longitudinal record and concluded that the medical record indicates some issues related to social awkwardness and learning problems (with diagnoses of borderline intellectual functioning and learning

---

[4] Mild limitations represent "[o]nly a minimal effect on the ability to perform basic work functions." (AR 446).

**MEMORANDUM DECISION AND ORDER - 14**

disorder), but nothing that meets or equals the listings. *See* (AR 37-38) ("Dr. Moore testified the [Petitioner] would have mild to moderate limitations in the ability to understand and remember detailed instructions; interact appropriately with the general public; set realistic goals or make plans independently of others; and maintain socially appropriate behavior. *In summary, Dr. Moore testified the record shows that the claimant is capable of handling simple, repetitive-type tasks without a problem, as well as more complex instructions if given enough time to learn by demonstration.*") (emphasis added); (citing ((AR 65-79) (Dr. Moore testifying: "And I think that that probably is the real essence of this record when you, when you put a person to, to work and see how they do, he did well. So, bottom line here is, I see some issues related to, perhaps social awkwardness, some learning problems, but nowhere near enough to meet or equal mental health listings."); *see also* (AR 41-42) ("Overall, Dr. Moore's testimony is adopted by the undersigned, and she stated the record supported only mild to moderate limitations in the ability to understand and remember detailed instructions; interact appropriately with the general public; set realistic goals or make plans independently of others; and maintain socially appropriate behavior.").

- Dr. Gardner disagreed with Dr. Rehnberg insofar as he felt that Petitioner was able to understand/remember simple instructions and capable of attending to and persisting on simple tasks. *See* (AR 42) (citing (AR 411)). Even so, according to the ALJ, "Dr. Gardner's opinion that the claimant had a low level of achievement, but 'has some functional capacities,' is consistent with Dr. Moore's testimony that the objective testing of record, while supporting the diagnoses of borderline intellectual functioning and learning disorders, did not suggest that is all he could accomplish," *Id*.

- Statements from TESH indicate that Petitioner was "continuing to meet . . . employment expectations and . . . would be retained in what has been noted as permanent and stable employment." (AR 40) (quoting (AR 348)). According to the ALJ, "[t]hese records further indicate [Petitioner] gets along with all coworkers, is respectful, and was described as 'very helpful,' 'his appearance is great,' and 'most of all he WANTS to work.'" (AR 40) (quoting (AR 350, 355-56)); *see also supra* (citing/quoting (AR 395-97)).[5]

---

[5] TESH's input is noteworthy with respect to Dr. Rehnberg's opinions because, in three instances, he deferred to TESH on the issue of Petitioner's (1) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary limits; (2) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See* (AR 448-49).

**MEMORANDUM DECISION AND ORDER - 15**

- Petitioner testified that he is capable of generally performing the tasks necessary to live independently – e.g., talk with friends on the computer, goes to movies, travels to see his closest relative in Sandpoint, Idaho, walks to the library/appointments, and is able to prepare meals for himself, perform housekeeping, and go shopping. *See* (AR 42) (citing (AR 86, 89-90, 93-95).

With all this in mind, there is no question that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ) that impact his ability to work; however, it cannot be said that the ALJ failed to provide specific legitimate reasons for rejecting/questioning certain of Dr. Rehnberg's opinions. The opinions of this provider were not given the weight Petitioner would have preferred; however, such opinions clearly were considered in the context of the surrounding medical record.

The Court's duty here is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decisions on how to consider Dr. Rehnberg's opinions. His decision to discount such opinions is supported by clear and convincing, specific, and legitimate reasons for doing so. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. See Richardson, 402 U.S. at 401; Matney, 981 F.2d at 1019.

## IV. <u>CONCLUSION</u>

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d

at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: **April 17, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge